IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**BEVERLY KAY MEDLEY**                                                             **PLAINTIFF**

**V.**                                                                          **NO.: 1:20-cv-110-JMV**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY**                                                    **DEFENDANT**

## ORDER

This cause is before the Court on Defendant's motion [29] to alter or amend the August 11, 2021, Final Judgment [29], brought pursuant to Rule 59(e) of the Federal Rules of Procedure. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having considered the briefing of the parties and applicable law, finds the motion is not well taken for the reasons set out below.

### Rule 59(e)

Rule 59(e) permits a litigant to file a motion to alter or amend a judgment. FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment"). "[A]mending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Group. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Instead, Rule 59(e) serves the narrow purpose of allowing a party to bring errors or newly discovered evidence

to the Court's attention. *See In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012). Moreover, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.* (citation omitted).

## Judicial Review of Social Security Cases

Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## Discussion

The Commissioner states the instant motion is brought to correct manifest errors of law or fact. He charges as follows:

> The court erred by finding that substantial evidence did not support
> the ALJ's residual functional capacity assessment because the RFC

>did not correspond to medical opinion in the record, as demonstrated by the Court's order that the agency to obtain "a full RFC assessment" from "the reviewing physician." . . . By finding that the hearing decision lacked substantial evidence just because the record did not contain a medical opinion from a physician who had reviewed the entirety of the medical evidence, the Court de facto invalidated the Commissioner's revised regulatory framework, yet offered no rationale as to why the revised regulatory framework was not entitled to Chevron deference. This conclusion is irrefutable given that the Court specifically stated that remand was being ordered for the sole purpose of having "the entirety of the medical records . . . reviewed by an appropriate medical official" and obtaining "a full RFC assessment . . . by the reviewing physician," i.e., for the creation of medical opinion evidence. . . . [t]he sole basis for finding that the hearing decision lacks substantial evidence was the absence of medical opinion evidence.

Comm'r's Mem. Supp. 2-3, 9. [31].

According to the Commissioner, the above assertions manifest legal error as the same amount to a "refusal by the court to apply the Commissioner's revised regulatory framework for evaluating medical opinion evidence and claims filed after March 27, 2017." *Id.* at 2. This, according to the Commissioner, "represents a de facto rejection of the Commissioner's broad rulemaking without authority without legal justification." *Id.*

Respectfully, the Commissioner inaccurately recounts this Court's findings. What the court held was that there was no substantial evidence to support the RFC assessment that Plaintiff could walk up to six hours in an eight-hour workday. Nowhere did the court find that the only reason there was no substantial evidence to support the RFC's 6-hour walking assessment was because there was no medical opinion corresponding to all the medical evidence – and, notably, no such finding is actually quoted by the Commissioner. On the other hand, it is accurate that none of the DDS examiners on whom the ALJ relied reviewed any of the 2018 through 2019 medical records related to the knee, including the June 2018 "bone on bone" knee x-ray and/or the accompanying assessment by the specialist later that year that a total knee replacement was needed, and certainly,

the court noted this. But what the court found was that there was no credible evidence to support the March 22, 2019, RFC assessment of an ability to walk 6 hours in a day. In fact, counsel for the Commissioner at the recent hearing, when asked to identify the substantial evidence of record to support the RFC that Plaintiff could walk six hours, four hours, or two for that matter, declined to do so basically noting that the court could not either. *See* Oral Tr. 5-11. [26].

In short, while the Commissioner argues at length in the instant motion that the court erred by failing to acknowledge that certain regulations have been amended, the Commissioner is mistaken as the court fully acknowledges that the regulations have been amended and would apply in the instant case.[1] What the Commissioner fails to acknowledge, however, is the fact that what has not been abrogated is the legal obligation of the ALJ to formulate an RFC that is supported by substantial evidence. In this case, the record evidence put forward by the claimant demonstrates that over the course of time her left knee progressively worsened such that by the spring of 2018, she was regularly seeing her family nurse practitioner with continuous complaints of worsening knee pain, and then, on referral, she began seeing an orthopedist who found, on diagnostic testing, her knee had deteriorated to a state of bone-on-bone deformity for which he recommended a total knee replacement (once an abdominal incision that had remained unhealed for nearly two years was no longer infected). The orthopedist specifically found beginning in June 2018 and again in November 2018 the following with respect to the involved knee in particular:

> Ms. Medley is a 50-year-old white female who has had left knee pain for several years. It has gotten much worse over the past several months. It hurts her to stand; it hurts her to walk, and it hurts her at night. On the exam of the knee, she is tender over the medial joint line. She has got 1+ effusion. She has got pain with McMurry's testing. She has crepitus with tibiofemoral range of motion. She has full extension. She flexed to 125 degrees. X-RAYS AP and lateral

---

[1] It is notable that it was, in fact, the ALJ who cited erroneously to the prior regulations. See Tr. 14-15.

>x-rays of the knee show bone-on-bone deformity in the medial compartment. Diagnosis: Degenerative arthritis, left knee.

*See* Tr. 689.

When she returned again to the specialist in November 2018, he noted, "[s]he states the shot [she was given on prior exam] helped *slightly*,"[2] (emphasis added) and he made essentially the same findings as earlier. *See* Tr. 690. On this occasion, however, he advised that his plan was to do a total knee replacement. *See id.*

In short, the Commissioner's determination that that Plaintiff could walk daily for up to six hours out of eight is unsupported by substantial evidence. By way of further example, the court notes that the Commissioner asserts Plaintiff's complaints of knee pain were uncorroborated and "inconsistent with objective medical evidence," *see* Br. 12 [19], which is plainly erroneous as there is no question but that substantial corroborative evidence of Plaintiff's increasing complaints of knee pain, including objective testing and x-rays by a specialist as well as his plan to do a total knee replacement are such corroborating evidence. Notable, too, is the Commissioner's entirely erroneous assertion that "the Plaintiff has not shown that her condition deteriorated after the State agency consultants reviewed her medical records through 2017". The record actually reflects that State agency physicians only reviewed an x-ray of the involved knee taken in 20*15* – at a time when it showed only "moderate tricompartmental degenerative disease with mild joint effusion." By 2018, of course, when seen by the specialist and x-rayed again, the situation had obviously deteriorated, evidencing "bone-on-bone deformity" of knee warranting a total knee replacement. Notably too, the orthopedist observed on first seeing the claimant in June 2018, that while the knee pain had reportedly existed for a number of years, it had become increasingly worse over the last

---

[2] The ALJ mischaracterized this statement when he asserted that claimant reported, instead, that the injection helped. Tr. 19.

several months. The Commissioner also asserted that in March of 2018, when seen by her FNP, that though she had a shuffling gait, claimant had no abnormal muscle skeletal findings. The record, however, reflects that she was specifically found to have "abnormal gait and stance. "And, it is with respect to the specialist's exams of the knee, in particular, that the inaccuracies/omissions in the Commissioner's assertions are most concerning: Specifically, the Commissioner asserts:

> Orthopedist Dr. Foropoulos interpreted a June 2018 left knee x-ray, which showed "bone-on-bone deformity in the medial compartment," concluding the x-ray showed degenerative arthritis However, Dr. Foropoulos also observed on examination that Plaintiff was well-developed and well-nourished, with a good range of motion in the left hip and ankle, full knee extension, and nearly full (125 degrees) knee flexion, despite some effusion. . . . When Plaintiff returned to Dr. Foropoulos in November 2018, examination was once again largely normal, showing a normal range of motion despite some effusion. Plaintiff wanted to pursue a knee arthroplasty to address her pain, even though she did not appear functionally limited, but was unable to do so because of incomplete healing of a wound from a December 2016 small bowel resection due to an incarcerated incisional hernia.

*See* Br. 10-11. [19].

Tellingly, no mention is made by the Commissioner (or ALJ, for that matter) of the specialist's finding of painful McMurray's testing of the knee, the noted tenderness of the knee joint, the abnormal knee flexion,[3] or the finding of crepitus ("grinding") on temporal fibula range of motion (ROM) of the knee. And, far from any mention of the doctor's plan to do a total knee replacement or these abnormal findings, the Commissioner actually asserts that when Plaintiff returned to Dr. Foropoulos in November 2018, "examination was once again largely normal, showing a normal range of motion despite some effusion." And, that Plaintiff "wanted" a knee replacement "even though she did not appear functionally limited." *Id.* at 11. Suffice it to say, there

---

[3] The Commissioner asserts that at 125 it is "nearly normal "even though 140 is normal flexion, and as noted above, he elsewhere erroneously asserts further that the knee's ROM was found by the specialist to be "normal." *See* Br. 12 [19].

is nothing in the November visit, or the specialist's assessment thereat of the need for a knee replacement, that supports these statements. *See* Tr. 690.

Also, to the extent the Commissioner insists the Court improperly shifted the burden of proof from the claimant to the ALJ with respect to proving disability – this argument is without merit in view of a record that contains objective evidence of a deteriorating knee deformity requiring a total knee replacement.

Finally, the Commissioner makes passing reference to the fact that neither the Court's oral ruling nor Final Judgment explicitly reflects a finding that the record was insufficiently developed or that the claimant was prejudiced by a record that was not adequately developed. The Court finds while it is correct neither the oral ruling nor judgment contains the express terms, the fact that the record was insufficiently developed for the ALJ to formulate the claimant's RFC is, nevertheless, implicit in the Court's ultimate ruling, which requires remand and a medical professional's assessment of the 2018/2019 medical records referenced above.[4]

In conclusion, the Court finds the errors raised by the Commissioner by way of the instant motion are insufficient to warrant vacating the Court's judgment and affirming the Commissioner's decision. Accordingly, the motion is DENIED.

**SO ORDERED**, this the 5th day of October, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[4] With respect to the Commissioner's suggestion this Court is without authority to remand this case with the instructions contained in the final judgment, the Court will simply state it finds the Commissioner's arguments without merit. *See Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) (citing 42 U.S.C. § 405(g) and stating, "[a] reviewing Court can, in its discretion and for 'good cause shown,' remand a social security claim in order that additional evidence be taken")